# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                                                    No. CR 15-4268 JB

SHAUNA GUTIERREZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Sealed Objections to the Presentence Report and Sentencing Memorandum for Defendant Shauna Gutierrez, filed March 6, 2019 (Doc. 2558)("Objections").[1] The primary issue is whether the 2-level increase for the victim's sustaining serious bodily injury under § 2A2.1(b)(1)(B) of the United States Sentencing Guidelines Manual (U.S. Sentencing Comm'n 2018)("U.S.S.G.")[2] applies where the Plaintiff

---

[1] Gutierrez files three separate documents that are substantively identical: (i) Sealed Objections to the Presentence Report and Sentencing Memorandum for Defendant Shauna Gutierrez, filed March 6, 2019 (Doc. 2556)("First Filing"); (ii) Sealed Objections to the Presentence Report and Sentencing Memorandum for Defendant Shauna Gutierrez, filed March 6, 2019 (Doc. 2557)("Second Filing"); and (iii) the Objections. The Court notes that the First Filing lacks the attachments that both the Second Filing and the Objections contain, and that the Second Filing is filed ex parte. See generally First Filing; Second Filing; Objections. Accordingly, the Court relies on the Objections to complete this Memorandum Opinion and Order.

[2] The Supreme Court of the United States held, in Peugh v. United States, 569 U.S. 530 (2013):

> District courts must begin their sentencing analysis with the Guidelines in effect at the time of the offense and use them to calculate the sentencing range correctly; and those Guidelines will anchor both the district court's discretion and the appellate review process in all of the ways we have described. The newer Guidelines, meanwhile, will have the status of one of many reasons a district court might give for *deviating* from the older Guidelines, a status that is simply not equivalent for *ex post facto* purposes.

United States of America did not present medical testimony at trial that the assault on Jose Gomez resulted in serious bodily injury. The Court concludes that medical testimony is not necessary to establish that Gomez suffered serious bodily injury. Accordingly, the Court overrules Gutierrez' Objection and applies the 2-level adjustment under U.S.S.G. § 2A2.1(b)(1)(B).

Defendant Shauna Gutierrez pled guilty to the Second Superseding Indictment Count 14, "Conspiracy to Murder J.G."; Count 15, "Attempted Murder of J.G., Assault With a Dangerous Weapon Upon J.G., Resulting in Serious Bodily Injury to J.G."; and Count 16, "Tampering With a Witness, Victim, or Informant by Physical Force or Threat," on March 29, 2018. Second Superseding Indictment at 17-18, filed March 9, 2017 (Doc. 949). See Plea Agreement at 2, filed March 29, 2018 (Doc. 2003). In her Plea Agreement, Gutierrez admits the following facts and declares them true under penalty of perjury:

> The United States could prove at trial that the Syndicato de Nuevo Mexico (SNM) prison gang is an ongoing criminal organization whose members, prospects and associates engage in acts of violence and other criminal activities including murder, kidnapping, attempted murder, and conspiracy to manufacture/distribute narcotics. The SNM operates in the District of New Mexico and elsewhere. The SNM constitutes an enterprise (individuals associated in fact that engaged in, or the activities of which, affected interstate commerce) that engaged in racketeering activity.
>
> On or about February 27, 2016, in the District of New Mexico, I conspired with others to harm the person identified in the indictment as J.G., an SNM gang

---

569 U.S. at 549 (emphasis in original). The 2018 Guidelines Manual provides, however, that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced" unless doing so "would violate the *ex post facto* clause of the United States Constitution," in which case "the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G. § 1B1.11(a)-(b)(1). Gutierrez committed various offenses against Jose Gomez on February 27, 2016, see Second Superseding Indictment at 17-18, filed March 9, 2017 (Doc. 947), so the 2015 Guidelines Manual, effective November 1, 2015, would apply to the offenses if the Court does not use the current Guidelines Manual, see U.S.S.G. § 1B1.11(b)(3). Using the 2015 Guidelines Manual does not change the result here. See U.S.S.G. § 1B1.11(b)(1). Accordingly, the Court uses the 2018 Guidelines Manual.

> member.  J.G. was a witness in a formal proceeding against an SNM gang member.
> I provided other individuals with J.G.'s physical location, upon which they went to
> that location and assaulted J.G.  J.G. was struck on the head with a machete, which
> injured his head and caused serious bodily injury.
>
> Part of the reason J.G. was beaten was to prevent him from testifying in a
> formal proceeding against an SNM gang member.  I committed these crimes and I
> aided and abetted others involved in the commission of these crimes.

Plea Agreement ¶ 13, at 5-6.  The Plea Agreement provides that Gutierrez "agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the defendant's sentence, including, but not limited to, the advisory guideline offense level."  Plea Agreement ¶ 14, at 6.

The Presentence Investigation Report, filed July 18, 2018 (Doc. 2350)("PSR"), elaborates on the offense conduct, providing:

> 21.    On February 27, 2016, a deputy with the Valencia County Sheriff's Office
> was dispatched to a residence in Belen, New Mexico, in reference to a disturbance.
> According to the caller, an unidentified person forced his way into a person's home,
> and a total of four individuals came into the residence carrying swords, guns, and a
> machete.  The call was disconnected, and officers responded to the home in
> question.  Once at the residence, deputies were not able to locate any evidence of a
> crime.  Deputies learned another person had called and stated they had witnessed a
> man covered in blood running across their property; however, he was no longer in
> the area.  Shortly thereafter, deputies were dispatched to another residence as the
> caller stated her son, J.G., had been injured.  Once at the second residence,
> emergency medical services (EMS) were requested.  EMS evaluated J.G. and
> subsequently transported him to the University of New Mexico Hospital (UNMH)
> in Albuquerque, New Mexico.
>
> 22.    A detective with the Valencia County Sheriff's Office, Criminal
> Investigation Division proceeded to UNMH and made contact with the emergency
> room staff, who advised J.G. had two lacerations to his head, one on the crown and
> the second above his right temple.  He also had a broken nose, and his right eye
> was swollen and discolored.  Upon the detective making contact with J.G., he
> disclosed he had been working on Charlene Johnson's residence in Belen and had
> been staying at her home.  According to J.G., Johnson left her home at
> approximately 9:00 AM on February 27, 2016, and asked him to "watch the house".
> He fell asleep on one of the beds and was awaken with a punch to his stomach.  He

saw four people standing over him and identified them as Santos Gonzales, Brandy Rodriguez, Paul "Oso" Rivera, and another female he did not recognize.

23.   J.G. indicated Gonzales asked, "You remember me?" and hit him in the eye. Gonzales instructed the unknown female to go to the front and watch the door. One of the individuals told J.G. that Joe Lawrence Gallegos had put a "hit" on him, and they were going to kill him. "Oso" then hit J.G. with a baton, after which, he passed the weapon to Rodriguez, and she hit J.G. J.G. noted he saw Gonzales holding a machete, and as he attempted to get off of the bed, Gonzales struck him twice on his head with the machete "like he was chopping a pineapple". According to J.G., he fell to the floor and lost consciousness.

. . . .

27.   On March 9, 2016, the detective made contact with J.G. for a follow-up interview. According to J.G., he had recently been followed by people driving a white van but did not provide any additional information as to why he might be followed. J.G. added the three individuals who attacked him mentioned Joe Lawrence Gallegos had put a "green light" on him, and they were going to "kill him". J.G. indicated Rodriguez and "Oso" had batons, while Gonzales was carrying a machete. He stated all three beat him with batons, and Gonzales struck him in the head with the machete. J.G. noted he lost consciousness and was presumed dead.

. . . .

29.   On May 17, 2016, FBI agents again met with Johnson in reference to the incident that occurred at her home in February 27, 2016. According to Johnson, Rodriguez and two men came to her house and asked to speak to J.G. Johnson identified the two men as Santos Gonzales and Paul Rivera. She noted they told her to leave the house, then pushed past her to go find J.G. Johnson stated she heard shouting and described it as "the worst sound I've ever heard". She added, "They almost killed him. It was terrible." Johnson stated she, Rivera, Rodriguez, and Gonzales then went into the backyard. A short time later, J.G. fled the house and jumped over the fence. Gonzales and Rivera shouted, "He's running! He's getting away!" Johnson stated the other three fled the scene in an unspecified vehicle. According to Johnson, she believed the assault had something to do with Joe Lawrence Gallegos and his girlfriend, **Shauna Gutierrez**.

. . . .

31.   In summary, . . . three . . . individuals[, not including Guiterrez,] attacked J.G. with a machete and a baton and would not allow him to leave the room where he was attacked after he regained consciousness. It is noted, J.G. sustained serious

> bodily injury as a result of the attack. All of this was done in an effort to stop J.G. from testifying at the trial of a known SNM member. The group conspired, and attempted, to murder J.G., and when they were unable to do so, they attempted to hide the weapons and all other items that would identify them as the individuals involved in the attack. It does not appear any one individual was leading the others; therefore, neither an aggravating nor mitigating role appears warranted in this case.

PSR ¶¶ 21-23, 27, 29, 31, at 9-11. The Court notes that the United States Probation Office ("USPO") with the Addendum to the Presentence Report, filed March 22, 2019 (Doc. 2595)("First Addendum"), updated paragraph 31 to comply with Gutierrez' Objections which notes that Gutierrez was not present when the attack on Gomez took place, because her three co-Defendants took her vehicle to the scene of Gomez' attack, leaving Gutierrez at Gallegos' home. See Objections at 4 (objecting because "Gutierrez was not present when the attack took place. The attack occurred at the trailer home of Charlene Johnson. Shauna Gutierrez was at the trailer belonging to Joe Gallegos at the time of the attack."); First Addendum at 3 (stating that Gutierrez is correct, and that the PSR "is updated to state Ms. Gutierrez was not one of the subjects who attacked J.G. with a machete and baton").

The USPO applies a base offense level of 33 under U.S.S.G §§ 2E1.3(a)(2) and 2A2.1(a)(1). See PSR ¶ 37, at 14. The USPO applies a 2-level increase under § 2A2.2(b)(1)(B), because Gomez sustained serious bodily injury, to which Gutierrez objects. See PSR ¶ 38, at 13; Objections at 5. Gutierrez provides that "Jose Gomez sustained two lacerations to his head, one on the crown and the second above his right temple. J.G. also had a broken nose and his right eye was swollen and discolored." Objections at 5. Gutierrez notes that Gallegos is the only Defendant charged in Counts 14-16 who went to trial, and that "[t]he jury returned a verdict of 'Not Guilty' for" these Counts. Objections at 5. Gutierrez contends that "[m]edical evidence was not presented to the Jury that the injury 'resulted' in 'serious bodily injury.'" Objections at 5 (citing

Memorandum Opinion and Order, 318 F. Supp. 1272, filed March 5, 2018 (Doc. 1870)("Baca MOO")). Gutierrez states that Defendant Anthony Ray Baca made a similar argument regarding Count 8, and "[t]he Court made the point that the Government failed to present medical professionals that the victim for Count 8 sustained serious bodily injury" and therefore "concluded that the injury suffered did not 'result in serious bodily injury.'" Objections at 5 (internal quotation marks for emphasis)(citing Baca MOO at 7, 318 F. Supp. 3d at 1277-78). Gutierrez asserts that, because "[t]he Government did not present medical testimony that the assault on J.G. (Jose Gomez) resulted in serious bodily injury," and because "[t]he only testimony concerning the injury was Jose Gomez and the officers from Los Lunas[,]" § 2A2.1(b)(1)(B) should not apply. Objections at 6. The USPO states: "Based on the information provided to the United States Probation Office in the discovery material, [Gomez] did suffer from serious bodily injury after being attacked with a machete and baton." First Addendum at 3.

The Baca MOO issue is distinguishable from the issue here, however, and Gutierrez misconstrues it. First, the Baca MOO deals with Baca's "motion for a judgment of acquittal, under rule 19 of the Federal Rules of Criminal Procedure, as to Count 8, which charged Baca with conspiracy to commit assault resulting in serious bodily injury against Julian Romero." Baca MOO at 1-2; 318 F. Supp. 3d at 1274. The Baca MOO notes testimony "that the medical professionals who treated Romero did not believe that he sustained a serious bodily injury." Baca MOO at 2, 318 F. Supp. 3d at 1275 (citing Draft Trial Transcript at 298:23-25 (taken February 23, 2018)(Acee);[3] id. at 299:2-4 (Acee)). The Court writes: "Baca cannot have committed generic

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

conspiracy to commit assault resulting in serous bodily injury against Romero if Romero did not suffer serious bodily injury." Baca MOO at 5, 318 F. Supp. 3d at 1276. The Court clarifies that "a conspiracy to commit assault resulting in serious bodily injury requires only a conspiracy to commit assault and a resulting serious bodily injury." Baca MOO at 6, 318 F. Supp. 3d at 1277. The Court provides that this conclusion is because assault resulting in serious bodily injury has "a single mens rea requirement: intent to commit assault; . . . the perpetrator's mental state regarding the assault's results is irrelevant." Baca MOO at 5, 318 F. Supp. 3d at 1277 (citing United States v. Zunie, 444 F.3d 1230, 1233 (10th Cir. 2006)). The Court, therefore, held that, because the trial evidence "does not permit a reasonable juror to infer that Romero suffered a serious bodily injury," Baca could not "be convicted for conspiring to commit assault resulting in [serious] bodily injury against Romero" and granted Baca's motion for a judgment of acquittal on Count 8. Baca MOO at 7, 318 F. Supp. 3d at 1278.

The issue here is whether the United States' failure to "present medical testimony that the assault on J.G. (Jose Gomez) resulted in serious bodily injury" precludes the Court from applying the 2-level enhancement for serious bodily injury under § 2A2.1(b)(1)(B). Objections at 6. The Court notes that Gutierrez cites no caselaw for this proposition and cites only the Baca MOO for support, which the Court distinguishes from this issue here. Further, at no point in the Baca MOO does the Court state that the lack of medical professional testimony precludes Baca's conviction on Count 8; the analysis focuses on the sufficiency of the evidence as a whole. See Baca MOO at 1-7, 318 F. Supp. 3d at 1274-78. This stage is a sentencing proceeding and not a trial, and Gutierrez gave up her right to a trial by pleading guilty. The application of Guideline enhancements requires the Court to act as the factfinder, using a preponderance of the evidence standard, and, in so doing,

the Court "is not bound by jury determinations reached through application of the more onerous reasonable doubt standard." United States v. Magallanez, 408 F.3d 672, 685 (10th Cir. 2005)(McConnell, J.). The Guidelines do not require expert testimony to establish that the victim suffered serious bodily injury. Further, the Court could not find any caselaw requiring medical testimony to apply a bodily injury enhancement.

Recently, the United States Court of Appeals for the Sixth Circuit dealt with a defendant's contention "that 'determination of permanent or life-threatening bodily injury can *only be established* through the testimony of an expert.'" United States v. Williams, 737 F. App'x 235, 239 (6th Cir. 2018)(emphasis added by United States v. Williams)(quoting Appellant's Brief at 30). The defendant argued that the United States' "failure to present any evidence to support the lay testimony of the victim should have prohibited the District Court from overruling" his objection. United States v. Williams, 737 F. App'x at 239 (internal quotation marks omitted)(quoting Appellant's Brief at 31). The Sixth Circuit notes caselaw that applies the enhancement based on the victim's testimony alone, writing that "sentencing proceedings involve 'judicial fact-finding . . . using the preponderance of the evidence standard.'" United States v. Williams, 737 F. App'x at 239 (quoting United States v. Gates, 461 F.3d 703, 708 (6th Cir. 2006); and citing United States v. Mays, 285 F. App'x 269, 274 (6th Cir. 2008)). The Sixth Circuit provides that rule 702 of the Federal Rules of Evidence, the rule on expert testimony, "is permissive: the rule provides that '[a] witness who is qualified as an expert . . . *may* testify' and sets forth the requirements that must be met for such testimony to be admitted. Nowhere does Rule 702 *mandate* that expert testimony be obtained." United States v. Williams, 737 F. App'x at 240 (emphasis added by United States v. Williams)(quoting Fed. R. Evid. 702). It continues:

"More importantly, the Federal Rules of Evidence do not apply to sentencing proceedings." United States v. Williams, 737 F. App'x at 740 (citing Fed. R. Evid. 1101(d)(3); United States v. Hamad, 495 F.3d 241, 246 (6th Cir. 2007); Williams v. New York, 337 U.S. 241, 251 (1949)). Accordingly, the Sixth Circuit determined that "uncontroverted testimony furnished ample evidence" to support the application of U.S.S.G. § 2A2.1(b)(1)(A) and, because "[p]recedent firmly supports the authority of a sentencing court to make such a determination as this based on the preponderance of the evidence," the Sixth Circuit upheld the provision's application. United States v. Williams, 737 F. App'x at 241.

Likewise, precedent in the Tenth Circuit is clear that the sentencing court determines whether a Guidelines enhancement applies based on the preponderance of the evidence. See United States v. Hendrickson, 592 F. App'x 699, 705 (10th Cir. 2014)(unpublished)[4]("It is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence"); United States v. Garcia, 635 F.3d 472, 478 (10th Cir. 2011)("At sentencing, the government must prove facts supporting a sentencing enhancement by a preponderance of the evidence."); United States v. Rodriguez-Felix, 450 F.3d 1117, 1130 (10th Cir. 2006)("In calculating a sentence, a district court may continue to

---

[4]United States v. Hendrickson is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Hendrickson and United States v. Wilson, 216 F. App'x 767 (10th Cir. 2007)(unpublished) have persuasive value with respect to a material issue, and will assist the court in its disposition of this Memorandum Opinion and Order.

find facts by a preponderance of the evidence."). In analyzing different Guideline enhancements, the Tenth Circuit has rejected the contention that expert testimony is needed to justify them. See United States v. Kimler, 335 F.3d 1132, 1143-44 (10th Cir. 2003)(sustaining enhancements under U.S.S.G. § 2G2.2(b)(1) and (3)). Accordingly, the Court determines that medical testimony is not needed to justify the 2-level enhancement under U.S.S.G. § 2A2.1(b)(1)(B).

The PSR's facts are sufficient for the Court to conclude by a preponderance of the evidence that Gomez "sustained serious bodily injury," and Gutierrez admits this fact in her plea agreement. U.S.S.G. § 2A2.1(b)(1)(B). See Plea Agreement at 2 (pleading guilty to "Attempted Murder, Assault Resulting in Serious Bodily Injury and Assault with a Dangerous Weapon"); id. at 6 (admitting under penalty of perjury that Gomez "was struck on the head with a machete, which injured his head and caused serious bodily injury" (emphasis added)). The term "serious bodily injury" in this context "means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 Application Note 1(M). See U.S.S.G. § 2A2.1 Application Note 1 (providing that the term "serious bodily injury" has the meaning given "in Application Note 1 of the Commentary to § 1B1.1"). The focus here is on the victim's injury, and whether it: (i) caused "extreme physical pain"; (ii) caused "the protracted impairment of a function of a bodily member, organ or mental faculty"; or (ii) required "medical intervention." U.S.S.G. § 1B1.1 Application Note 1(M). See, e.g., United States v. Spinelli, 352 F.3d 48, 57 (2d Cir. 2003)(stating, in analyzing the bodily injury enhancements, "that the sentencing enhancements apply to the results of a crime, rather than to the circumstances of its commission"). The injuries that Gomez suffered -- lacerations to his head, a broken nose, and a

swollen eye -- meet this definition of "serious bodily injury." U.S.S.G. § 1B1.1 Application Note 1(M). See PSR ¶ 22, at 9. First, a jury could infer that Gomez suffered "extreme physical pain," U.S.S.G. § 1B1.1 Application Note 1(M), because Gonzales "struck him twice on his head with the machete 'like he was chopping a pineapple,'" and Gomez subsequently lost consciousness, PSR ¶ 23, at 10 (source of quote not provided). See United States v. Wilson, 216 F. App'x 767, 771 (10th Cir. 2007)(unpublished)(stating that a jury could "conclude that a stabbing, resulting in a five-inch wound, would case extreme physical pain"). Second, Gomez' injuries required "medical intervention such as . . . hospitalization," U.S.S.G. § 1B1.1 Application Note 1(M), because EMS evaluated Gomez and transported him to a hospital, where he was treated, see PSR ¶ 21, at 9. Gutierrez does not dispute these injuries or facts, and repeats that Gomez suffered these injuries in her Objections. See Objections at 5. See also Plea Agreement at 6 (allowing the Court to rely on the PSR's facts for sentencing purposes). Accordingly, the Court concludes that Gomez suffered serious bodily injury and that the 2-level increase under U.S.S.G. § 2A2.1(b)(1)(B) is proper. The Court overrules Gutierrez' Objection, and agrees with the PSR's calculation of her total offense level. See PSR ¶¶ 37-46, at 13.

**IT IS ORDERED** that the Objection to the application of U.S.S.G. § 2A2.1(b)(1)(B) in the Sealed Objections to the Presentence Report and Sentencing Memorandum for Defendant Shauna Gutierrez, filed March 6, 2019 (Doc. 2558), is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
  United States Attorney
Maria Ysabel Armijo
Randy M. Castellano
  Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

> *Attorneys for the Plaintiff*

Angela Arellanes
Albuquerque, New Mexico

> *Attorneys for Defendant Shauna Gutierrez*